JS - 6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WATER, INC., | CASE NO.: CV 08-218 ABC (SSx) |
| Plaintiff, | ORDER RE: MOTION TO DISMISS OR TRANSFER VENUE |
| v. | |
| EVERPURE, INC., et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss or Transfer ("Motion"), filed on June 6, 2008.  Plaintiff filed an Opposition, and Defendant filed a Reply.  The Court found the Motion appropriate for resolution without oral argument and took it under submission.  Upon consideration of the materials submitted by the parties and the case file, the Court hereby **GRANTS** the Motion.

**I.  BACKGROUND**

Plaintiff Water, Inc. ("Plaintiff") filed its initial Complaint in this action in January 14, 2008, asserting fourteen claims against

Defendant, including antitrust claims, interference claims, and claims for unfair competition and breach of contract, among others. On May 19, 2008, Defendant Everpure Inc. ("Defendant") moved to dismiss the case for improper venue or to transfer venue to the United States District Court for the Northern District of Illinois. Defendant argued that a forum selection clause in the parties' 1996 Distribution Agreement ("Agreement") upon which Plaintiff's claims were based requires Plaintiff to litigate this action in the Illinois court. Plaintiff filed no opposition to the motion. Instead, on May 22, 2008, Plaintiff gave Defendant notice of termination of the Agreement (FAC ¶ 11) and on July 2, 2008, Plaintiff filed its First Amended Complaint ("FAC") asserting thirteen claims against Defendant, including antitrust claims, interference claims, and a claim for unfair competition, among others, but no breach of contract claim. Because the Complaint was superceded by the FAC, the Court struck the motion to dismiss or transfer as moot.

Defendant again moves to dismiss the case for improper venue pursuant to Fed. R. Civ. Proc. 12(b)(3), or to transfer venue pursuant to 28 U.S.C. § 1406(a). Defendant contends that despite Plaintiff's attempts to avoid the forum selection clause by excluding the breach of contract claim and attempting to purge references to the Agreement from its FAC, its claims nevertheless relate to the Agreement. Defendant urges the Court to view Plaintiff's FAC as an exercise in artful pleading and to enforce the forum selection clause. Plaintiff opposes, arguing that the FAC is not an attempt at artful pleading. Rather, Plaintiff contends that the claims in the FAC – predominantly antitrust and unfair competition claims – are different from those in the Complaint. Specifically, the gist of these claims is that

1  Defendant is intimidating Plaintiff's customers into not doing
2  business with Plaintiff, thereby attempting to push Plaintiff out of
3  the market for residential water treatment products and increase its
4  own market share.  Furthermore, Plaintiff states that it filed the FAC
5  not to avoid the forum selection clause, but rather because it
6  terminated the Agreement on May 22, 2008 and the nature of the
7  parties' relationship therefore changed.  Accordingly, because the
8  Agreement is no longer in place, its claims are not and cannot be
9  related to it.

**II.  LEGAL STANDARDS**

A motion to dismiss for improper venue based on the enforcement of a forum selection clause is governed by Rule 12(b)(6).  Arqueta v. Banco Mexicano, S.A., 87 F.3d 320 (9th Cir. 1996).  Analysis under Rule 12(b)(3) permits the district court to consider facts outside of the pleadings.  Arqueta, 87 F.3d at 324.

The plaintiff has the burden of showing that venue is proper.  See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491 (9th Cir. 1979).  If the Court determines that venue is improper, it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

"Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching."  Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  Forum selection clauses can be equally applicable to contractual and tort causes of action.

3

1  In the Ninth Circuit, "[w]hether a forum selection clause applies to
2  tort claims depends on whether resolution of the claims relates to
3  interpretation of the contract."  Manetti-Farrow, Inc. v. Gucci
4  America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) (citation omitted).

### III.  DISCUSSION

The Agreement is attached as Exhibit A to the Declaration of Michael Madsen.  The forum selection clause therein states, in relevant part:

> Since Everpure and [Plaintff] have a significant interest in consistent interpretation of this agreement, and Everpure expects to have Select Master Distributors throughout the United States, Everpure and [Plaintiff] irrevocably submit, and waive any objection either may have, to personal jurisdiction or venue in the state and federal courts of applicable subject matter jurisdiction where Everpure's executive offices are located in Illinois.  All remedies provided in this Agreement are cumulative and, except for forum selection under this Section, are in addition to any remedy otherwise available under applicable federal, state or local law."  (Madsen Decl. Ex. A, § 10.9.)

The Court rejects Plaintiff's meritless assertion that this text does not constitute a forum selection clause.  Its plain language indicates that the parties agreed to litigate disputes under Illinois law, in the venue where Defendant's executive offices are located.  It is undisputed that Defendant's executive offices are within the Northern District of Illinois.  Furthermore, the clause identifies itself as a forum selection clause, and its language is unambiguous.

4

Also, because it uses the phrase "irrevocably submit" rather than "submit," the clause is mandatory.  Finally, Plaintiff advances no other arguments suggesting "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching."  <u>Bremen</u>, 407 U.S. at 15.  Accordingly, the Court need only decide whether the claims in the FAC relate to interpretation of the contract and, if so, whether to dismiss or to transfer the case.

A foundational premise of Plaintiff's argument that its claims are not related to the Agreement is that the Agreement is no longer in effect because Plaintiff terminated it on May 22, 2008.  Defendant asserts that Plaintiff's attempted termination of the Agreement was itself a breach of contract.  On this Motion, the Court need not resolve whether Plaintiff's attempt to terminate the Agreement was in fact effective and/or whether the notice was itself a breach.  However, as Plaintiff itself implicitly concedes, the progress of this litigation does hinge upon that question.  Section 9 of the agreement establishes the limited circumstances under which the parties could cause an early termination of the Agreement.  Under that section, Plaintiff could terminate the Agreement only (1) if Defendant notified Plaintiff of a "Distribution Policy" change that Plaintiff does not accept, and Defendant insists on the change, or (2) if Defendant became insolvent, or (3) if Defendant failed to cure its own breach after notice from Plaintiff and a 30 day opportunity to cure.  Plaintiff does not attempt to explain whether its termination of the agreement fell within one of the limited conditions under which such termination was permitted.

Furthermore, the resolution of many of Plaintiff's claims as Plaintiff itself has pled them turns on certain contract terms.  For

example, Plaintiff's third claim for relief for violations of the Lanham Act asserts that Plaintiff "has been the exclusive licensee of the trademark 'Everpure' when used in association with the Ever Brands products in the Western states for the past 29 years." (FAC ¶ 45.) Plaintiff asserts that Defendant is using "the trademark 'Everpure' in the Western states in association with products that are likely to cause confusion among the public with the Ever Brands products [Plaintiff] has marketed under the trademark 'Everpure' for thirty years." (FAC ¶ 46.) The relief Plaintiff seeks under this claim includes an injunction to stop Defendants' "sale of water chillers and instant hot product under the trademark 'Everpure' [because that conduct] has the likelihood of creating confusion in the marketplace." (FAC ¶ 46.) This claim implicates several terms of the Agreement, including section 1.3 (appointing Plaintiff as the exclusive distributor in the territory); section 6 (wherein Plaintiff "acknowledges the validity and ownership by [Defendant] of the registered trademarks 'Everpure' . . . and will respect the rights of [Defendant] in their other trademarks); and section 10.1 (an integration clause stating that the written agreement constitutes the entire agreement between the parties).

Although Plaintiff argues in its Opposition brief that its FAC does not challenge Defendant's right to use the 'Everpure' mark, the FAC is replete with allegations such as those quoted above doing exactly that. <u>See</u>, <u>e.g.</u>, FAC ¶¶ 45, 59, 69-72, 74-75 and 94-99. These allegations implicate at least five of Plaintiff's claims (the third, fifth, seventh, eighth, and thirteenth claims for relief), and Plaintiff cannot escape its own pleading. The Agreement includes a term, section 6, wherein Plaintiff recognizes Defendant's rights to

the 'Everpure' mark.  It is therefore clear that Plaintiff has asserted claims challenging Defendant's use of the mark "Everpure," and that these claims are related to interpreting the terms of the Agreement.

In addition, Plaintiff's FAC refers to "conduct and representations" of Defendants that gave rise to what Plaintiff claims was an "exclusive license to sell the EVERPURE filtration device under the mark 'Everpure'. . ." (FAC ¶ 94.)  Although Plaintiff suggests that this license arises out of a course of conduct going back 30 years to the parties' "verbal 'hand shake' agreement," see FAC ¶ 8, the 1996 Agreement includes an integration clause stating that that document comprises the entirety of the parties' agreement and expressly superceding any other agreements or understandings.  (Madsen Decl. Ex. A, § 10.3.)  Thus, even insofar as Plaintiff's claims are based on a license arising out of prior conduct, that means, at a minimum, that the Agreement is implicated because of its integration clause.

Finally, section 5.5 of the Agreement is implicated in Plaintiff's sixth claim for relief, for violation of Cal. Bus. & Profs. Code § 17200.  Therein, Plaintiff contends that Defendant misappropriated Plaintiff's confidential marketing plan.  (FAC ¶ 62.)  Under section 5.5 of the Agreement, Defendant "reserve[d] the right to approve all promotion practices, advertising or literature."  Thus, whether Defendant's alleged use of Plaintiff's marketing plan violated section 17200 likely requires a determination of whether that use was in fact contracted for in the Agreement.

In short, it is clear that many of Plaintiff's claims "relate[] in some way to rights and duties enumerated in the" Agreement.

1  Manetti-Farrow, 858 F.2d at 514.  These claims are therefore within
2  the scope of the forum selection clause.
3       The Court finds it unnecessary to determine whether each and
4  every claim stated in the FAC relates directly to the Agreement.  It
5  is clear that at least five of Plaintiff's claims are directly related
6  to the Agreement, and that the remainder of Plaintiff's claims are
7  related to those five claims and to the business relationship between
8  the parties memorialized in the Agreement.  The forum selection clause
9  is broad enough to encompass all causes of action or claims related to
10 the business relationship established by the Agreement.  See, e.g.,
11 Stewart Organization, Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th
12 Cir. 1987) (finding that because the forum selection clause governed
13 all claims relating to the parties' business relationship evidenced by
14 the contract, it necessarily governed claims that were not contractual
15 in nature).  Furthermore, judicial economy would not be served by
16 severing the case between those claims that directly relate on the
17 Agreement and those that relate to it indirectly, and litigating the
18 action in two fora.  Rather, all claims are best litigated in the same
19 forum.  Therefore, because at least five of Plaintiff's claims are
20 directly related to the Agreement, and the Agreement's mandatory forum
21 selection clause requires that these claims be litigated in the
22 Northern District of Illinois, all of Plaintiff's claims will be
23 transferred there. The Court finds that transferring the action to
24 that district, rather than dismissing the case, is in the interests of
25 justice under 28 U.S.C. § 1406(a); indeed, Plaintiff expressed no
26 preference for dismissal of the case rather than transfer.
27 //
28 //

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1406(a) and hereby **ORDERS** the case to be transferred to the United States District Court for the Northern District of Illinois.

**IT IS SO ORDERED.**

**DATED:     August 4, 2008**

_____
**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**